So let's proceed with 18-3259 Frost v. ADT. Mr. Rhoades. Thank you your honor and good morning. May it please the court and may it please my esteemed co-counsel. My name is Randy Rhoades. I represent the plaintiffs who are the appellants in this matter before the court. This appeal arises from a case the district court dismissed under Rule 12-B-6. The underlying case pertained to the wrongful death of a lady named Elizabeth Frost. My clients are her minor son and the administrator of her estate. ADT the defendant is represented by my esteemed colleague Jason Scott. Too many issues are raised in this appeal to address today. I apologize for that but I think it's important to start off by talking about the standard of review and two important related issues. The court is aware that this is de novo review and the four corners of the complaint are what drive this court's review of the district court's decision. This case is complicated because the defendant added matters outside the pleading. Here the defendant attached a contract to its motion to dismiss and in large part in hindsight the district court relied on that document in granting the 12-B-6 motion. Did your complaint rely on the contract in describing? No, your honor. Well, let me ask you, one of the arguments that was raised in your appellate brief related to the impropriety of ADT including affirmative defenses in their motion to dismiss, did you object to that below? That was the entire tenor of our brief, particularly. Well, I looked at your brief and your brief doesn't even use the words affirmative defense. Because we spent the whole time in our brief arguing why are we debating contractual issues and contractual defenses in a tort case. Well, if you are claiming an impropriety, you have to alert the court to the impropriety and that means telling them why it's wrong to do that and citing cases to do that. You didn't cite those cases that you're citing to us now, did you? We did not. All right. This court has held, though, that it's not proper to grant a motion to dismiss on affirmative defenses unless each and every element of those defenses are pled. Each and every element of those defenses and the facts in support of those defenses are pled in the complaint and there's no question and no argument that none of those elements  So, for that reason, we contend before you even get to the merits of the case, the district court erred. We think there's further error in the court not advising the parties that it intended to take into consideration the unauthenticated contract that was attached to the motion to dismiss. Rule 12D says that when the court decides to do so, it has to tell the parties so they can be allowed to be given a reasonable opportunity to present all materials pertinent to a motion for summary judgment. And this court has held, and I quote, a failure to convert a 12B6 motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials, end quote. And again, absent that contract, there is nothing in the complaint, in the four corners of the complaint, that supports the granting of this 12B6 motion. Counsel, as I understood your answer a minute ago to Judge Holmes, that your complaint doesn't reference or impliedly refer to a contract, and looking at page 5 where you state facts common to all counts, you say the decedent's home was equipped with a security system sold and monitored by the defendant. And on page 7, you say on or before August 15, 2016, the defendant owed decedent and minor plaintiff duties separate and apart from its contractual duties included but not limited to the following. Are you still maintaining that your complaint, even though it's well pled, doesn't have implied references and or references to a contract? There are certainly those references that your Honor talks about, but in particular the one where we said above and beyond whatever duties may arise from a contract, the duties are A, B, and C, citing various different things. We didn't raise a breach of contract action. Had we raised a breach of contract action, then by all means, the defendant would have been well within its right to attach the contract, and the court, the district court, could and should have looked at it. Are you saying that you can win on this case without any reference or referral or having to go to that contract? I think that's the best way for me to win in the case. Well, yeah, that'd be the, it'd be, well, I won't make that comment, though. All right. Obviously, the contract is going to become relevant if the 12B6, the order granting the 12B6 motion is overturned, but that's going to be relevant when we get to the burden of proof, not the burden of pleading. In this case, right now, in the posture it's in, revolves around only the burden of pleading, and when you look at the four corners of our complaint, and we've heard a lot about that phrase today, the four corners of the complaint, you just can't uphold the entry of dismissal because we did not plead the elements of the affirmative defenses, and we did not plead our way out of the causes of action that we attempted to raise on behalf of the plaintiffs. Now, my... If we look at the contract, aren't you stuck with the one-year contractual statute of limitations? That's certainly in there, and, you know, we've briefed extensively why we don't think it applies, and I think the Pfeiffer case supports our position. I know this court's opinion in BCS has been cited by the defendant, and cited well, but I would suggest that BCS presents a completely different situation. It's one thing, first of all, that was a summary judgment motion, so the court was presented with a case that was at the burden of proof, not the burden of pleading. But more importantly, I think that these contractually imposed statute of limitations are fine in a case where sophisticated litigants are represented by good lawyers, and if Jason's firm and my firm had negotiated the contract in consideration of being paid for lowering the statute of limitations, then I think the court could consider enforcing it like it did in BCS. But I think these contractually imposed limitations on shortening of statute of limitations inform adhesion in consumer contracts. It's a farce, and it's wrong to say that those are negotiated. Where in the law, and what citation would you allude to that, or refer to, that would suggest that the fact that these are lay people, as opposed to good lawyers, is even relevant? I think it's relevant when you try to balance the public policy of the state of Kansas, where the legislature has set forth the statutes of limitation it believes are appropriate for various causes of action that are statutory causes of action, in this case. That in and of itself, the Kansas Supreme Court has said is indicative of the public policy. And if parties want to change public policy, as the court addressed in FIFER, then it needs to do so under limited circumstances, and not in a way that obfuscates public policy, or is contrary to public policy. I apologize. I asked you for some authority. And FIFER uses the language strongly held public policy interests. And so one would need to, I think if you're going to make this public policy argument regarding the limitations, give us some strongly held public policy interests in Kansas that has been memorialized, not just belief, memorialized, so that we can rely on it. And so that's what I'm asking you. I apologize. I wasn't trying to be evasive, Your Honor. I was trying to be responsive. And I would point, Your Honor, to the briefing in our reply brief, where we talked about public policies that underlie the wrongful death statute in Kansas, that underlie the survival action in Kansas, and underlie, particularly, the Kansas Consumer Protection Act. And I would submit that those public policies far outweigh the public policies that were at issue in FIFER when the court in Kansas was deciding whether or not Federal Express's effort to limit the plaintiff's ability to take her claims to court were proper. I think the Kansas Supreme Court, I think the Kansas legislature, have made their public policy very clear, that they think litigants should have certain time periods in which to bring claims under these statutory actions that we've raised. And so that would be my response and the authority I would refer you to. I would also note that we have a minor plaintiff in this case, which is different than virtually every other case, and I've looked exhaustively, and the only case I could find is the one that was cited in our reply brief, wasn't exactly on point, but it was close, whereas service wasn't effectuated in Kansas in a timely manner. And so as to the adult plaintiff, the court said, no, statute of limitations is run, but the statute that tolls, statutes of limitation for minors apply to save the claim as to the minor. And so why would we apply the tolling provision to a contractual statute of limitation? It looks like the party bargained for one year and that's it. Why would we import another variation of the statute of limitation, i.e. tolling or some other type of provision? Well, sure, and again, I would just like to have the one-year statute of limitation thrown out. But if we're going to say that that's here and it's enforceable, I don't see that the contract in any way impacts non-signatories. And we've cited numerous cases to the court that held non-signatories to alarm contracts are not bound by provisions that limit the alarm company's liability, and that would be the case. Doesn't the estate step into the shoes of the decedent? I'm sorry, could you repeat that? Doesn't the estate step into the shoes of the decedent? The estate does, arguably, for the survival claim, but the minor plaintiff doesn't. So I don't see what divests the minor plaintiff of something the legislature has decided is By what they be, be told. There's not an exception. Those are for statutory statutes of limitation. Here the parties have bargained for something outside the wrongful death statutory scheme. True. I don't disagree with you, and again, I'm not trying to be non-responsive, but the legislature in the state of Kansas has decided that the public policy of the state is, in any civil action, statutes of limitations are told for a certain time period. And there's no exception noted by the Kansas legislature, nor has there ever been one engrafted on it by the Kansas courts or this court, nor should there be. If Ms. Frost, the decedent, is going to be bound by that, then that's obviously a matter for the survival action and maybe some of the other claims of the administrator, who stands in her shoes. Should we certify that question to the Kansas Supreme Court? I haven't asked that that be done, but if your honors wish to do that on your own volition, I would sure encourage it, but I don't think you need to. I think Kansas law is clear that cases involving minors, statutes of limitations are told. And the defense hasn't offered any case law to suggest otherwise. We're into the contract and kind of the merits, but I want to be sure that I understood your answer to Judge Holmes' question at the very beginning, and that is, did you make the argument under the 12B-6 in the contract to the district court? Because I couldn't find anywhere in what the district court said that he even came close to approaching that issue. And as I recall, your answer was, well, you were arguing more about the terms of the contract than it was not. It is not as clear in our briefing at the district court level as Judge Holmes has indicated, and I think I agreed, as I would like. But I would suggest that we argued it extensively throughout the brief by saying repeatedly, why are we litigating contractual issues in a tort case when we've pled all the necessary elements of our claims? And I agree with you, the district court, in her opinion, she did not address the first two issues I raised today as they relate to the standard of review. I see that my time is nearly up, so unless the court has any more questions, I will sit down and submit our case on the brief. Though I would invite the court to join me in wishing my co-counsel a very happy birthday. Thank you. Mr. Scott, on your birthday? Your honors, may it please the court, counsel. Judge Robinson was right when she issued her order, and I think Mr. Rhodes would agree with me when she said that this case is very tragic. She was also right in seeing this case in the complaint that was being pled for exactly what it was, and it was an attempt by a very talented plaintiff's lawyer to circumvent long-standing Kansas precedent in freedom to contract, and even longer-standing precedent in the state of Kansas and courts nationwide upholding and enforcing limitation provisions in contracts, in this particular alarm liability, I'm sorry, alarm services contracts. What basis was there to attach the contract to a motion to dismiss? That's not what a motion to dismiss is supposed to be about. It's supposed to be testing, pleading, averments of the complaint. So, I mean, why was that proper? Your honor, it's proper because under this court's precedent in GFF, the last one, Associated Wholesale Grocers, you're allowed to attach pleadings, attach documents that are not within the four corners of a complaint, and the court can decide them and rely on them when deciding a motion to dismiss if they are, one, central to the claims that are being asserted, and two, if there's no dispute, it's to authenticity. In this instance... You can attach them to the motion to dismiss, you're saying? Thank you, your honor, yes. You can attach them to a motion to dismiss and the court can consider them in deciding that motion. They then become part of the pleadings that the court is reviewing when deciding the 12B6 motion. Now, they were central to your affirmative defenses, but they were not central to his complaint. As his complaint was listed, there were those stray lines of reference beyond the complaint. These were the duties. I mean, the contract, it didn't refer to the contract specifically, did it? It did refer to the contract in multiple instances, talking about, one, the obligation to provide these alarm monitoring services, two, talking about the formation of an agreement and how ADT allegedly took advantage of the lack of education on the part of Ms. Frost, and this in the agreement. There's multiple discussions about the transaction that occurred between Ms. Frost and ADT as it relates to those KCPA claims. And at Moore Base, there's absolutely zero duty in the state of Kansas, under common law or under statute, to provide alarm monitoring services to a residence. It doesn't exist. So the duties that are being complained of here are specifically identified within the four corners of the contract. They actually are identical to the duties that are allegedly not being performed properly by ADT in the complaint, and it was proper, therefore, for the court to consider it. If there was a dispute as to the authenticity of that document, I don't see how there could be, but if there was such a dispute, it should have been raised in opposition briefing to provide Judge Robinson an opportunity to address that issue, but it was not raised. The contract identifies clearly the decedent, the location, the address, and it specifically identifies the same exact duties that the plaintiffs claim are now being breached in this case. All right. Well, let's move beyond the contract and detaching the contract that doesn't answer the second question, which is why it was appropriate to argue affirmative defenses in a motion to dismiss. Now, there may be a preservation issue on the other side. I get that, but that doesn't explain why you would think that that was okay. It's not okay, is it, under the law? I believe it is okay, Your Honor. How so? Because it's not necessarily—the case law that Mr. Rhodes is referring to in the Tenth Circuit case law as it relates to affirmative defenses, particularly in statute of limitations instances, his initial argument, his complaint is really, I didn't plead the facts that would allow you to argue all the necessary elements you would need to support your affirmative defense. And in this particular instance, because the contract is central to his claims, because there's no dispute as to authenticity, because it is part of what the court is reviewing in testing the sufficiency of the claims that he's asserting in his complaint, there's no need to allege those facts in the complaint because the court has the information in that document itself. So the fact that he has not necessarily identified the specific provisions in the contract, typically plaintiffs don't when they litigate these types of cases, is not fatal to—and does not prevent the court from reviewing those provisions and utilizing the facts as pled in the complaint to test whether or not those claims are sufficient. In this instance, taking the one-year limitation of action provision, it's perfectly proper for a court at a 12B6 stage to interpret a contract as a matter of law, to review that provision and to take the allegations in the complaint of when the incident occurred, in this case the fire, and when the filing of the lawsuit happened, and determine it's out of time pursuant to that contractual agreement. The same would hold true for any arguments on express warranties and disclaimers of express warranties and also on any limitation of damages as set forth in the contract. And I know there was some discussion with Mr. Rhodes as it related to the contractual one-year limitation of action and particularly how it applied to the minor's claim here. Judge Robinson actually didn't even need to get to that point in order to dismiss this case. In Kansas, if you have a contract between two parties and this court has recognized it and the Kansas Supreme Court has recognized it, you don't need to look outside of that contract and you are not allowed to look outside of that contract to create tort duties. In fact, you're not allowed to plead these tort claims in the existence of a legal relationship and contract to try and circumvent the terms that are in that contract, which is exactly what we see happening in here. It's recognizing that the contract itself would severely limit and in this instance bar the ability of the plaintiffs to bring suit. Pleading tort claims in an attempt to avoid that does not fly in Kansas law. In Kansas law, if there's a specific result and a specific bargain for a limitation and a consequence of breach, you can't plead a tort claim.  Certainly, Your Honor. It seems to me that it wouldn't be inconsistent with Kansas law to have a tolling provision applicable to a minor to apply the Ross v. Harden situation where the statute of limitations was told. Why couldn't that coexist with the contractual provision here? Two questions and I apologize for the confusion. You asked for the legal authority. Is it related to that particular issue or is it related to what I had just talked about with regard to independent tort claims? Answer in bold, yeah. No problem. I'll start with the latter question first because I think that that's what's the most pressing here. The Frost case that's being relied upon as it relates to tolling the limitation provision for a minor in the state of Kansas, that case and none of the other cases that are cited by appellant focus on what Judge Robinson focused on in her opinion, which was the proper focus, which is the language of the wrongful death statute itself. And that language says there's a condition precedent that requires if the decedent would have been able to pursue the cause of action had she not died. The focus is on the decedent's actions and anything she may have done before death that may affect the ability and right of an heir to bring suit under the wrongful death statute after her death. In this instance, the case that is actually binding is the case of Mason v. Guerin, and in that case they found that a decedent's conduct before death, allowing a statute of limitations to run, can prevent an heir from bringing suit after death. Judge Robinson? That's distinguishable because in this case the decedent died before the one-year period, so the tolling provision could apply to the minor here, unlike in the Mason case. And I think the focus is not necessarily on the minor's status as a minor. The focus is on the decedent's ability to pursue the claim. It's the condition precedent as it relates to the specific language in the wrongful death statute. She would have been able to pursue the claim at the moment of her death, up to and until the moment of her death. Correct, Your Honor. She had agreed, pre-death, she had agreed in that contract to bring any claim within a year. That agreement, just like any other contractual agreement, would have been binding on the heir as it related to the claims that she could pursue had she not died. Just tell me why the tolling provision would not apply. The tolling provision would not apply because it would not affect the decedent's ability, one way or the other, to bring that claim. An analogous case, I think, that would be helpful here is the Salazar case that this relates to wrongful death, but it contains the same language, it contains that same condition precedent if the decedent would have been able to pursue the action had they not died. In that case, a father had contracted to rent a snowmobile. He died in the course of that snowmobile as a result of an accident, and his estate, including his spouse and young children, sought to bring suit afterward. But as a part of that renting of the snowmobile, he had executed a full waiver of release with death, and that contractual agreement, what we're looking at, was effective in barring not only the wife's claims, but also the minor children's claims in pursuing a claim later on. So the same logic, the same application that this court applied in Salazar would work here because the condition precedent is Ms. Frost's negotiation and agreement with ADT as it relates to how long anybody who is going to bring a claim, basically on her behalf because there's no argument that the minor is claiming some independent basis to sue ADT as it relates to its provisioning of services to him. As Judge Timkovich is colloquially with you, the case you just described, Salazar, is not entirely a fit because the question is, if you're even focusing on the decedent, if you're saying could the decedent have brought the claim, well, the decedent's dead, so we don't How do you know the decedent couldn't have brought the claim? The decedent's just dead. And so it's not really the same thing. It's a different kind of fit. I mean, Salazar, of course, if you signed a contract that waived your rights and then your heirs try to bring a claim, they can't bring it because you waived your rights. We're talking about a time, a temporal period here, and if the decedent is dead, who's to say the decedent couldn't have brought the claim in a year? Was there any other impediment beyond death to the decedent bringing the claim? So even if we're focusing on the decedent, why doesn't tolling make sense? I think the tolling doesn't make sense because, again, it's the relationship that the decedent had as it existed at the time of her death. So what were the limitations that would have passed along? What limitation did she have pre-death? Was there anything that would have barred her, and the answer would be no. And so if you're saying post-death, well, post-death, she's dead. So there's a year period of time here. She can't do anything within that year. I think I understand your distinction you're making here, so there's two points I'd like to raise. The first one is, well, there were agreements that she made in that contract that were limiting her even at the time of her death. So you have an agreement to cap recoverable damages to $247. So that agreement, similar to the full release of waiver of liability, would necessarily continue on and affect an heir's or an estate's ability to pursue a claim against ADC after her death. Okay, I get that. That's a clear fit to Salazar. All I'm trying to do is acknowledge the fact that as it relates to the limitations provision, it doesn't seem to me that those two things are coterminous. The situation in Salazar and this one are not the same thing. And therefore, the question is, what's the answer? Even if the focus is on the decedent, how do we deal with the fact that we're talking about a time period, and what do you do with the time period issue? I think the time period issue would still be valid. I think it's that contractual agreement, similar to the limitation provision, similar to an exculpatory provision, a full release and waiver of liability that would have existed. Those do not change. And it is the decedent's ability to pursue those claims, not necessarily the minors that they're reviewing. That was Judge Robinson's analysis. It's focusing on, could the decedent have pursued those claims? Because the minor is simply standing in the decedent's shoes. Same as the estate. The other analysis, the other aspect of it, and the reason why the court doesn't even need to get to that point of it, is the minor's claim is based on contract. It's not based on tort. The minor's claim would not be able to go forward under Kansas tort law because it's premised solely on duties that exist in the party's agreement. Because there were specific bargain for duties, and because there was a specific bargain for result, Kansas law isn't going to allow a tort claim to proceed. So the minor's wrongful death claim would be extinguished on those grounds as well. Do you have any Kansas authority that addresses specifically the issue that we're all talking about right here? And that would be the question of whether a one-year limitation of action provision would be told in the event of a minor pursuing a wrongful death claim. There is no specific Kansas authority directly on that. That seems to me to be under the facts that have been well-pled here. Why shouldn't the Kansas court be given the opportunity? Because he may lose completely on the estate issue. But how does that help us with the minor's question here, if there is an alleged separate cause of action that she might have in this case? And I think that's because, Your Honor, it would be covered under the lack of any tort duty that would be owed. The only basis for the claim of the minor as it moves forward, it's a separate ground for affirmance of the opinion on appeal. But how do we know that at this time? Based upon the allegations that were pled in the complaint as it relates to the duties that were allegedly breached existing solely within the obligations ADT had to Ms. Frost under that contract. So you're saying that when we look at this complaint, there's absolutely no other type of cause of action that's being stated for the minor that do not arise out of this contract? I think they all flow from this contract, Your Honor. I understand that there are additional fraud and or Kansas Consumer Protection Act claims. I understand my time is up. If I can have a few seconds to address it. Those claims can be affirmed, the dismissal of those claims can be affirmed on other grounds. If we're not going to be applying the one-year statute of limitation, if we're going to focus on the allegations that the minor has pled in support of those claims. We don't have that in front of us right now, do we, counsel? We don't have. What you're saying as far as how to dismiss in regards to the minor. What we have here is a 12B6 dismissal and we have the question of the minor and the tolling of that. I'm not talking about the estate's problems in this matter. And I understand. Can you state the other grounds to allow for affirmance? The other grounds would be there is no tort duty that would have been owed as it relates to the obligations, the duties that are allegedly breached here, the receipt in response to The fraud claims lack the specificity as it requires to win. Any of the alleged misrepresentations would have been made or would have been seen by the decedent. And finally, the Kansas Consumer Protection Act claims lack the same specificity as to win and also an aggrievance, meaning how was she aggrieved by seeing these representations? And I think the case law that we outlined in our brief does a very good job of explaining the discrepancies and issues there. If there's any further questions, I'm happy to address them. Thank you, Counselor. Your time has expired. I appreciate the arguments. Counsel are excused and the case shall be submitted.